OPINION
{¶ 1} This is a consolidated appeal of a decision of the Fairfield County Court of Common Pleas which reversed the denial of unemployment compensation benefits to appellee by the Review Commission at the administrative level.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellee, James Weir, was employed from 1990 until March 8, 2001 by appellant, Lancaster City Board of Education (Employer), as an eighth grade teacher and curriculum writer.
 {¶ 3} As a result of a student's allegation of misconduct, appellee was indicted.
 {¶ 4} During the pendency of the felony charge, appellee was transferred from the classroom to a curriculum writer position.
 {¶ 5} Appellee filed a grievance.
 {¶ 6} A settlement of such grievance was reached on March 8, 2001 between the Employer, appellee and the Lancaster Education Association whereby appellee agreed to submit his resignation, effective at the end of the 2000-2001 school year with sick leave utilized to such effective date. No recitation as to unemployment benefits was referenced nor was appellee's licensing status as a teacher included.
 {¶ 7} Also on March 8, 2001 appellee resigned his position with Employer with the resignation included by reference in the settlement agreement.
 {¶ 8} Thereafter, a resolution of the felony charge was reached. Such agreement included the obligation that appellee surrender his teaching certificate.
 {¶ 9} Employer thereupon ceased payment to appellee under R.C. § 3319.30.
 {¶ 10} An additional grievance followed.
 {¶ 11} Appellee filed for unemployment compensation benefits on August 7, 2001 due to Alack of work.@
 {¶ 12} The second grievance was settled on August 31, 2001.
 {¶ 13} Appellant Employer raises two Assignments of Error:
 ASSIGNMENTS OF ERROR I. {¶ 14} THE COURT BELOW ERRED AS A MATTER OF LAW IN ALLOWING UNEMPLOYMENT COMPENSATION BENEFITS BY APPLYING THE AVOLUNTARY LAYOFF EXCEPTION IN R.C. SECTION 4141.29(D) WHERE THE SEPARATION FROM EMPLOYMENT WAS NOT BECAUSE OF A LACK OF WORK AND THE SEPARATION WAS NOT PURSUANT TO ANY LABOR-MANAGEMENT AGREEMENT OR PLAN, PROGRAM, OR POLICY OF THE EMPLOYER AUTHORIZING EMPLOYEES TO ELECT LAYOFF.
 II. {¶ 15} THE COURT BELOW ERRED AS A MATTER OF LAW IN AWARDING UNEMPLOYMENT COMPENSATION TO A FORMER TEACHER WHO, AFTER HE VOLUNTARILY QUIT, LATER SURRENDERED HIS TEACHING LICENSE IN CONJUNCTION WITH THE SETTLEMENT OF FELONY CRIMINAL CHARGES AGAINST HIM, AND WHO COULD NOT BE EMPLOYED OR PAID AS A PUBLIC SCHOOL TEACHER DUE TO THE SURRENDER OF HIS LICENSE.
 I. {¶ 16} In the trial court's memorandum of decision two points are noted.
 {¶ 17} Judge Clark states that appellant Employer failed to follow the March 8, 2001 agreement regarding its contractual obligation to pay appellee.
 {¶ 18} Appellant Employer counters this by stating that R.C. '3319.30 prevents payment to a non-licensed teacher.
 {¶ 19} Such statute states:
 {¶ 20} "Except as provided in section 3319.36 of the Revised Code, no person shall receive any compensation for the performance of duties as teacher in any school supported wholly or in part by the state or by federal funds who has not obtained a license of qualification for the position as provided for under section 3319.22 of the Revised Code and which license shall further certify to the good moral character of the holder thereof. Any teacher so qualified may, at the discretion of the employing board of education, receive compensation for days on which the teacher is excused by such board for the purpose of attending professional meetings, and the board may provide and pay the salary of a substitute teacher for such days."
 {¶ 21} Whether the trial court's conclusion as to a breach of contract had any relation to the decision is unknown. However, it is clear the Board was prohibited from paying appellee by statute and that appellee created such bar to payment by surrendering his license.
 {¶ 22} The second point in the decision and that which is the focus thereof is R.C. 4141.29(D)(2)(a)(ii) which provides:
 {¶ 23} "(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:
 {¶ 24} "* * *
 {¶ 25} "(2) For the duration of the individual's unemployment if the director finds that:
 {¶ 26} "(a) The individual quit work without just cause or has been discharged for just cause in connection with the individual's work, provided division (D)(2) of this section does not apply to the separation of a person under any of the following circumstances:
 {¶ 27} "* * *
 {¶ 28} "(ii) Separation from employment pursuant to a labor-management contract or agreement, or pursuant to an established employer plan, program, or policy, which permits the employee, because of lack of work, to accept a separation from employment; "
 {¶ 29} The trial court determined that the March 8, 2001 agreement fell within an exception to the voluntary quit rule provided by the above statutory provision.
 {¶ 30} It concluded the Agreement of March 8, 2001 constituted a labor-management agreement under the above referenced subsection to R.C. 4141.29.
 {¶ 31} We fail to find a definition of Alabor-management agreement@ in the Revised Code.
 {¶ 32} Revised Code 4117.01, while not defining such term defines, by implication a collective bargaining agreement in subsection (G) which states:
 {¶ 33} "(G) "To bargain collectively" means to perform the mutual obligation of the public employer, by its representatives, and the representatives of its employees to negotiate in good faith at reasonable times and places with respect to wages, hours, terms, and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement, with the intention of reaching an agreement, or to resolve questions arising under the agreement. "To bargain collectively" includes executing a written contract incorporating the terms of any agreement reached. The obligation to bargain collectively does not mean that either party is compelled to agree to a proposal nor does it require the making of a concession."
 {¶ 34} The standard of review applicable to the trial court and this Court is that the decision at the administrative level may not be reversed unless it is unlawful, unreasonable or against the manifest weight of the evidence. Tzangas, Plakas and Mannos v. Ohio Bur. of Emp.Serv. (1995), 73 Ohio St.3d 694.
 {¶ 35} In this case, the issue is whether such decision was unlawful based upon the trial court's interpretation of R.C.4141.29(D)(2)(a)(ii).
 {¶ 36} Under general principles of statutory construction, our paramount concern in construing the above statute is the legislative intent. In determining legislative intent, we look to the language in the statute and the purpose to be accomplished. See: State ex rel. Carter v.Wilkinson (1994), 70 Ohio St.3d 65, 66.
 {¶ 37} We are not required to give deference to the trial court's interpretation as to statutory construction but we must review the language independent of such ruling.
 {¶ 38} While it may be argued, as both appellant and appellee have done that the agreement of March 8, 2001 is or is not a labor management agreement and that R.C. 4141.29(D)(2)(a)(ii) does or does not reference all agreements to which an employer and labor representative are parties, not being limited to collective bargaining contracts, it is unnecessary to arrive at a definitive decision as to the legislative intent thereon.
 {¶ 39} The statute does not end with "contract or agreement" but states "which permits the employee, because of lack of work," to accept a separation from employment.
 {¶ 40} The "which" refers both to a labor-management contract or agreement and to an established employer plan program or policy but notwithstanding the existence of either, the requirement of "lack of work" is applicable.
 {¶ 41} In this case, while appellee filed his claim due to lack of work, the evidence is clear that such was not the case.
 {¶ 42} We cannot conclude, therefore, that appellee qualified for unemployment benefits under such statutory exception.
 {¶ 43} The decision of the Court of Common Pleas, in reversing the administrative decision is vacated and the decision of the Review Commission is affirmed.
By Boggins, J., Gwin, P.J., and Wise, J., concur.
Topic: Unemployment Compensation.